**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

TERRY PALMER,                                  :
                                               :
            Plaintiff,                         :      Case No. 3:23-cv-127
                                               :
      v.                                       :      Judge Thomas M. Rose
                                               :
DEPARTMENT OF THE UNITED STATES                :
AIR FORCE, Frank Kendell III,                  :
                                               :
            Defendant.                         :

_____

**ENTRY AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY**
**JUDGMENT (DOC. NO. 18)**

_____

Presently before the Court is Defendant's Motion for Summary Judgment ("Motion") (Doc. No. 18). In the Motion, Defendant Department of the United States Air Force, ("Defendant") seeks summary judgment on Plaintiff Terry Palmer's ("Plaintiff") claims of race discrimination, sex discrimination, and retaliation. (Doc. No. 18.) Plaintiff alleges he was subjected to multiple instances of discrimination, based on race and sex, and retaliation over the course of late 2017 into 2019. (Doc. No. 1 at PageID 3-4.)

For the reasons discussed below, Defendant's Motion for Summary Judgment is **GRANTED**.

I.      **BACKGROUND**

Plaintiff, an African-American male, began working for the Air Force in 1985. (Doc. No. 16-1 at PageID 131.) Plaintiff first arrived at Wright-Patterson Air Force Base (WPAFB") in 1996 and had held a variety of positions on base during his career. (*Id*. at PageID 138-41.)

1

### A. **Initial Incident**

By 2017, Plaintiff was working in foreign military sales for the F-16 fighter-bomber directorate. (*Id*. at PageID 148-151.) In April 2017, the director of Plaintiff's group informed him that his co-workers were alleging that he treated them unfairly, that he thought he knew everything, and that he failed to recognize the efforts of others in the group. (*Id*. at PageID 155-56.) Shortly thereafter, on April 14, 2017, Plaintiff filed a grievance against two of his supervisors, Connie Walker ("Walker") and Danny Johnson ("Johnson"), alleging he had been falsely accused by a co-worker. (*Id*. at PageID 191, 194-95.)

In September 2017, a co-worker accused Plaintiff of making a threatening gesture toward her. (*Id*. at PageID 153.) In response to this complaint, Plaintiff was issued several documents on October 5, 2017. (*Id*. at PageID 187.) Plaintiff received a letter of pending investigation, an EAP letter advising he could receive counseling, and a no-contact letter. (*Id*. at PageID 187-88.) Plaintiff's accuser also received a no-contact letter. (*Id*.)

After receiving these letters on October 5, Plaintiff decided to ask a witness to the incident to go with him to meet with several supervisors. (*Id*. at PageID 189.) The witness began to relate what he had seen in relation to the September 2017 complaint, the substance of which he had already memorialized in a memorandum for the investigation. (*Id*. at PageID 188-89.) One of Plaintiff's supervisors, Walker, told the witness to stop speaking and stated that they could not hear his account. (*Id*. at PageID 189-90.)

In response to this incident, Plaintiff decided to speak with the Equal Employment Opportunity office ("EEO"). (*Id*. at PageID 200.) On October 6, 2017, Plaintiff informed two higher level supervisors of his decision and informed Michele Simons ("Simons") that he was leaving the office to speak with the EEO. (*Id*. at PageID 200-01.) Shortly after he arrived at the

EEO, Simons called to tell Plaintiff that Johnson wanted to speak with him.  (*Id*. at PageID 201.) Upon his return to the office, Plaintiff was informed by Johnson that he was being transferred to Air Force Security Assistance & Cooperation Directorate ("AFSAC").  (*Id*. at PageID 202.)

### B.  <u>Reassignment to AFSAC</u>

From the outset Plaintiff opposed his reassignment to AFSAC and told his superior, Don Thompson ("Thompson"), that it was not in his professional interest to go to AFSAC.  (Doc. No. 16-1 at PageID 210.)  Plaintiff was very familiar with AFSAC, as it worked closely with the F-16 fighter-bomber directorate.  (*Id*. at PageID 222-23.)  Indeed, Plaintiff was already familiar with AFSAC systems when he went to observe its operations prior to his move.  (*Id*. at PageID 227-28.)  Plaintiff still had no desire to move to AFSAC and informed his union representative that he wished to be assigned elsewhere.  (*Id*. at PageID 224.)

Nonetheless, Plaintiff began his new assignment with AFSAC on October 16, 2017.  (*Id*. at PageID 232.)  Plaintiff's supervisor with AFSAC was Elaine Norsworthy ("Norsworthy").  (*Id*. at PageID 229-30.)  On his first day at AFSAC, Plaintiff informed Norsworthy that he believed he was there illegally, and the union was working on having him removed.  (*Id*.)

 For Plaintiff to perform his new role at AFSAC, it was necessary for him to gain access to the AFSAC systems.  (*Id*. at PageID 238.)  However, an individual cannot have dual accounts for system access supporting two different organizations.  (*Id*.)  Put simply, Plaintiff had to out-process from the F-16 bomber-directorate in order to gain systems access at AFSAC.  (*Id*.)  In order to do so, Plaintiff needed to fill out DD Form 2875 for every system access he needed.  (*Id*.)  The process of gaining system access would have taken approximately one week.  (*Id*. at PageID 239.)

By December 14, 2017, nearly two months after moving to AFSAC, Plaintiff still had not gained complete systems access at AFSAC.  (Doc. No. 16-2 at PageID 509-10.)  He emailed

3

Norsworthy on December 14, "I would like to get this issue resolved before we continue to push forward on DD 2875s that may not be necessary." (*Id.*) At this point in time Plaintiff believed that he was going to be moved out of AFSAC. (Doc. No. 16-1 at PageID 259.) In response, Norsworthy instructed Plaintiff to send her the DD Form 2875s by 1100 on December 14, 2017. (Doc. No. 16-2 at PageID 509.) Plaintiff failed to do so. (*Id.*) As a result, Plaintiff was issued an interim notice of reprimand on February 18, 2018 and a decision to reprimand on April 4, 2018 for failing to follow his supervisors instructions. (*Id.* at PageID 509-10, 518.)

## C. <u>Reassignment to Delivery Reporting</u>

Following his reprimand, Plaintiff was reassigned, on April 30, 2017, to the Delivery Reporting section within AFSAC. (Doc. No. 16-1 at PageID 295.) Plaintiff was familiar with and had worked with Delivery Reporting before and considered himself a subject-matter expert. (*Id.* at PageID 301.) However, Plaintiff still wanted to be reassigned out of AFSAC entirely. (*Id.* at PageID 296.)

Plaintiff's disciplinary issues did not cease with his reassignment. On May 10, 2018, Darla Brumfield ("Brumfield"), a section chief in AFSAC, emailed Plaintiff because she had been informed that Plaintiff was directing a co-worker to complete some of his work. (Doc. No. 16-2 at PageID 529-31.) Brumfield informed Plaintiff that he did not have the authority to direct others to complete work for him. (*Id.* at PageID 529.)

Heedless of this warning, on May 11, 2018, Plaintiff again directed another two co-workers to complete projects for him. (*Id.* at PageID 532-35.) Again, on May 14, 2018 Plaintiff directed a third co-worker to complete a task for him. (*Id.* at PageID 536-37.) Each instance was reported to Brumfield. (*Id.* at PageID 532-38.) As a result, on June 14, 2018, Plaintiff was suspended for five days due to his failure to follow instructions. (*Id.* at PageID 539-42.)

Along with these issues, Plaintiff was assigned multiple projects by Brumfield. (Doc. No. 17-1 at PageID 772-892.) On multiple occasions, Plaintiff either delivered incomplete work or failed to timely deliver work. (*Id.*)

On July 26, 2018, Plaintiff emailed his second level supervisors requesting a reassignment away from AFSAC upon his return from suspension on August 6, 2018. (Doc. No. 17-1 at PageID 765-66.) Alternatively, Plaintiff requested that he at least be moved from Brumfield's supervision. (*Id.*) He further informed his supervisor that he would be speaking with the inspector general, the union, and the EEO about his experiences. (*Id.*)

### D. Medical Leave and Retirement

On August 7, 2018, the day after returning from suspension, Plaintiff went out on medical leave due to "the stress created by the bogus suspension." (Doc. No. 16-2 at PageID 550-51.) Jonathan Landon ("Landon"), Plaintiff's second level supervisor, informed Plaintiff that he would need to submit medical documentation in accordance with Air Force policy if his leave was going to last longer than three consecutive workdays. (*Id.* at PageID 550.) Plaintiff did not return to work until October 22, 2018. (Doc. No. 16-1 at PageID 337.) Over the course of the two months Plaintiff was absent, Brumfield and Landon emailed Plaintiff multiple times directing him to file the required medical documentation for his leave. (Doc. No. 16-2 at PageID 543-45.) Plaintiff was further advised that the three doctor's notes he did submit did not comply with the Air Force's requirements. (*Id.*)

On October 29, 2018, Plaintiff was served with a Notice of Proposed Removal. (Doc. No. 16-2 at PageID 598-600.) He was charged with being absent without leave ("AWOL") for 360 hours and failing to complete assigned duties. (*Id.*) Plaintiff voluntarily retired, prior to a ruling on the Notice of Proposed Removal, on February 28, 2019. (Doc. No. 17-2 at PageID 928-29.)

5

### E. **EEO Complaint and Procedural History**

On June 28, 2018, Plaintiff filed his EEO Complaint. (Doc. No. 16-3 at PageID 661-63.) Plaintiff's EEO Complaint only addressed issues that arose after October 10, 2017 and his reassignment to AFSAC. (*Id*.) A Final Agency Decision on his EEO Complaint was issued on February 2, 2023. (*Id*. at PageID 896-915.)

On May 3, 2023, Plaintiff filed his Complaint alleging retaliation and discrimination on the basis of race and sex. (Doc. No. 1.) Again, Plaintiff's Complaint only concerns those issues that arose after October 10, 2017 and his reassignment to AFSAC. (*Id*. at PageID 2-4.) Defendant filed the present Motion on May 6, 2024 (Doc. No. 18) and Plaintiff filed his response on June 12, 2024 (Doc. No. 21). Defendant filed its reply on June 26, 2024. (Doc. No. 22.) The matter is fully briefed and ripe for review and decision.

## II. **LEGAL STANDARDS FOR SUMMARY JUDGMENT**

Rule 56 of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought" and that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, affidavits or sworn declarations, and admissions on file, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(a), (c). The burden then shifts to the non-moving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In opposing

summary judgment, the nonmoving party cannot rest on its pleadings or merely reassert its previous allegations. *Id*. at 248-49. It also is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

A party's failure "to properly address another party's assertion of fact as required by Rule 56(c)" can result in the court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). Additionally, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In ruling on a motion for summary judgment, it is not the judge's function to make credibility determinations, "weigh the evidence[,] and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 255. In determining whether a genuine issue of material fact exists, the court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id*. at 255; *Matsushita*, 475 U.S. at 587; *Tolan v. Cotton*, 572 U.S. 650, 660 (2014). However, the "mere existence of a scintilla of evidence in support of the" nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id*. The inquiry, therefore, "asks whether reasonable jurors could find by a preponderance of the evidence that the" nonmoving party is entitled to a verdict. *Id*.

III.    **ANALYSIS**

Defendant makes a number of arguments regarding various portions of Plaintiff's claims. First, Defendant argues that Plaintiff fails to make out a *prima facie* case of discrimination because he cannot identify a similarly situated employee and a number of employment actions referenced by Plaintiff were not adverse. (Doc. No. 18 at PageID 998-1001.) Next, it contends that, to the extent one is plead, Plaintiff has failed to show the type of pervasive conduct necessary to make a hostile work environment claim. (*Id*. at PageID 1008-11.) Finally, to the extent retaliatory acts can be identified in Plaintiff's Complaint, Defendant contends that Plaintiff cannot show that any adverse employment actions were retaliatory. (*Id*. at PageID 1012-16.) The Court will address each argument in turn.[1]

### A. The *McDonnell Douglas* Framework

Title VII makes it an "unlawful employment practice for an employer. . . to discharge any individual, or otherwise to discriminate against any individual. . . because of such individual's race, color, religion, sex, or national origin…." 42 U.S.C. § 2000e-2(a)(1). Where a plaintiff relies on circumstantial evidence of discrimination, the Court analyzes the claim using the burden shifting framework from *McDonnell Douglas*. *Hardy v. Eastman Chem. Co.*, 50 F. App'x 739, 741 (6th Cir. 2002); *Johnson v. Donahoe*, 642 F. App'x 599, 608 (6th Cir. 2016).

Under the *McDonnell Douglas* burden shifting analysis the "plaintiff has the initial burden of demonstrating" the elements of the claim. *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 727 (6th Cir. 2007). Thus, the plaintiff must establish a *prima facie* case of discrimination.[2] *Wright v.*

---

[1] The Court will not address Defendant's argument regarding constructive discharge. (Doc. No. 18 at PageID 1016-20.) Plaintiff does not plead this claim directly or address the existence of such a claim in its response, thus the Court will consider any such claim to be abandoned to the extent it exists.

[2] Plaintiff states he "is entitled to a very strong inference of discrimination." (Doc. No. 21 at PageID 1039.) This statement is not accompanied by any additional explanation nor is it supported by any legal citation that would refute this standard.

*Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006). If the plaintiff succeeds, then "the burden of production shifts to the employer to identify a legitimate, nondiscriminatory reason for the termination." *Sullivan v. Coca-Cola Bottling Co.*, 182 F. App'x 473, 477 (6th Cir. 2006) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1094 (1981)). If the employer does so, then the burden shifts back to the plaintiff to prove "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Sullivan*, 182 F. App'x at 477 (quoting *Burdine*, 450 U.S. at 253)). "Throughout the analysis, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Sullivan*, 182 F. App'x 477 (quoting *Burdine*, 450 U.S. at 253).

### i.  The *Prima Facie* Case

Plaintiff does not contend that he has direct evidence of discrimination; therefore, the Court moves to the first step of the *McDonnell Douglas* burden shifting analysis. Plaintiff must establish a *prima facie* case of discrimination by showing, "(1) [he] is a member of a protected group; (2) [he] was subjected to an adverse employment decision; (3) [he] was qualified for the position; and (4) [he] was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably." *Regan v. Faurecia Auto. Seating, Inc.*, 679 F.3d 475, 481 (6th Cir. 2012) (quoting *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004)).

Defendant does not contest the first and third prongs of the *prima facie* case. Therefore, the Court will look to whether Plaintiff was subjected to an adverse employment decision and whether similarly situated non-protected employees were treated more favorably.

### a.  Adverse Employment Action

An adverse employment action is a "'materially adverse change in the terms or conditions

of employment because of the employer's actions.'" *Buggs v. FCA US, LLC*, No. 22-1387, 2023 U.S. App. LEXIS 1591, at *9-10, 2023 WL 2468378, at *3 (6th Cir. Jan. 20, 2023) (quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007)). A materially adverse change includes "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Fullen v. City of Columbus*, No. 2:08-cv-263, 2011 U.S. Dist. LEXIS 35803, at *23, 2011 WL 1303639, at *7 (S.D. Ohio Mar. 31, 2011) (quoting *Michael*, 496 F.3d at 593). "A reassignment without salary or work hour changes ... may be an adverse employment action if it constitutes a demotion evidenced by 'a less distinguished title, ... significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 797 (6th Cir. 2004) (quoting *Kocsis v. Multi-Care Mgmt. Inc.*, 97 F.3d 876, 886 (6th Cir. 1996)). However, "*de minimis* employment actions are not materially adverse and, thus, not actionable." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, at 462 (6th Cir. 2000).

Defendant cites several instances from the Complaint that they argue do not qualify as adverse employment actions. (Doc. No. 18 at PageID 999-1001.) Plaintiff fails to address this argument in his opposition.[3]

Defendant first points to three instances of "threatened action" contained in the Complaint. The first of the "threatened actions" was the May 10, 2018 email from Brumfield instructing Plaintiff not to delegate work. (Doc. No. 1 at PageID 3.) Next, was the May 14, 2018, allegation that Brumfield threatened to charge Plaintiff with AWOL for being late to work without informing her of his whereabouts. (*Id.*) Finally, Defendant points to another May 14 incident where Plaintiff

---

[3] Remarkably, in a sixteen page opposition to a motion for summary judgment, Plaintiff cites to *one* case.

informed Brumfield he would be leaving for an out-of-office meeting. (*Id.*) Brumfield asked where Plaintiff was going and when he would return. (Doc. No. 17-4 at PageID 948.) Plaintiff alleges she interfered with his right to participate in protected Union and EEO activities. (Doc. No. 1 at PageID 3.)

The threatened actions described above do not fall within the confines of adverse employment actions. *Plautz v. Potter*, 156 F. App'x 812, 817 (6th Cir. 2005); *see also Berryman v. SuperValu Holdings, Inc.*, No. 3:05-cv-169, 2010 U.S. Dist. LEXIS 32966, at *42, 2010 WL 1257845, at *12 (S.D. Ohio Mar. 31, 2010) (citing *Hollins v. Atlantic Co.*, 188 F.3d 652 (6th Cir.1999)) ("Mere threats to take adverse employment actions... are insufficient to constitute adverse employment actions themselves"); *Springer v. Metro. Gov't of Nashville & Davidson Cnty.*, 569 F. Supp. 3d 724, 731 n. 5 (M.D. Tenn. 2021). The threats described in the Complaint, therefore, do not, by themselves, satisfy the adverse employment action requirement.

Next, Defendant points to "non-discipline related incidents." (Doc. No. 18 at PageID 1000.) The first incident occurred when Plaintiff received a reduced score on one of the elements of his annual evaluation. (Doc. No. 1 at PageID 3.) Plaintiff received a 3 on one of the five elements of his annual evaluation, but still received a 5 ("outstanding") on his overall evaluation. (Doc. No. 17-3 at PageID 936, 946.) Plaintiff further alleges that his common access card ("CAC") was taken by AFSAC security under false pretenses. (Doc. No. 1 at PageID 4.) Defendant notes that this action was taken after Plaintiff had been served with his Proposed Notice of Removal and placed on administrative leave. (Doc. No. 18 at PageID 1000 (citing Doc. No. 16-1 at PageID 388-91).)

Turning first to the annual evaluation, Plaintiff received a 3 on one of the elements of the evaluation, while receiving an overall rating of "outstanding." (Doc. No. 17-3 at PageID 936,

946.) Plaintiff's opposition offers no explanation as to why this evaluation negatively affected his employment or changed his benefits, responsibilities, or title in any way. Thus, the Court cannot conclude the annual evaluation was an adverse employment action.

As to the confiscation of Plaintiff's CAC card, the Court cannot conclude that this action, by itself was an adverse employment action. Plaintiff had been placed on administrative leave at this point in time and was not to be in the workplace. Removing his access card did nothing more than put that employment action into practical effect. The confiscation of the CAC card is more appropriately subsumed by the administrative leave.

Two final incidents are raised by Defendant. First, between April 2018 and January 2019, Plaintiff asked to be reassigned 66 times. (Doc. No. 1 at PageID 3.) Second, is the April 4, 2018 letter of reprimand issued to Plaintiff. (*Id.*)

Defendant first argues that Plaintiff's requests for reassignment are not adverse employment actions because they did not constitute a significant change to his employment status. (Doc. No. 18 at PageID 1001.) Plaintiff again does not address this argument. Regardless, the Court cannot conclude that a failure to reassign Plaintiff was an adverse employment action. The Sixth Circuit has generally defined an adverse employment action to mean a "'materially adverse change in the terms and conditions of a plaintiff's employment.'" *Deleon v. Kalamazoo Cnty. Road Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014) (quoting *White*, 364 F.3d at 795). Failing to reassign Plaintiff is not a change, it is a retention of the status quo. Plaintiff has failed to present any evidence that Defendant's refusal to reassign Plaintiff lead to a materially adverse change in the terms and conditions of his employment.

Next, Defendant argues that the April 4, 2018 letter of reprimand is not an adverse employment action as it was not accompanied by a negative change to Plaintiff's employment

status. (Doc. No. 18 at PageID 1001.) The courts in the Sixth Circuit have consistently held that a letter of reprimand, unaccompanied by evidence of any resulting disciplinary action, does not rise to the level of an adverse employment action. *Taylor v. Geithner*, 703 F.3d 328, 338 (6th Cir. 2013); *see also McDaniel v. Ohio Dep't of Rehab. Corr.*, No. 2:14-cv-0122, 2015 U.S. Dist. LEXIS 162974, at *34, 2015 WL 7888759, at *6 (S.D. Ohio Dec. 4, 2015); *Vizcarrondo v. Ohio Dep't of Rehab. Corr.*, No. 1:18-cv-1255, 2019 U.S. Dist. LEXIS 203181, at *22, 2019 WL 6251775, at *7 (N.D. Ohio Nov. 22, 2019); *Halbauer v. DeJoy*, 538 F. Supp. 3d 736, 743 n. 2 (W.D. Ky. 2021). Therefore, the April 4, 2018 letter or reprimand was not an adverse employment action as it was not accompanied by any additional employments actions.

Therefore, these actions will not be considered adverse employment actions for the purposes of this motion.

### b. <u>Treatment of Similarly Situated Employees</u>

Defendant further contends that Plaintiff has failed to identify any similarly situated employees. (Doc. No. 18 at PageID 998.) In response, Plaintiff points to Angela Brown[4] ("Brown") as a similarly situated employee. (Doc. No. 21 at PageID 1040.) Brown was a co-worker under the supervision of Norsworthy and Dawn Holding ("Holding") during Plaintiff's initial AFSAC reassignment. (Doc. No. 16-1 at PageID 423-25.)

To be treated as similarly situated, an employee must "[1] have dealt with the same supervisor, [2] have been subject to the same standards and [3] have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or

---

[4] In its reply, Defendant also references two additional potential comparators: Cheryl Graham ("Graham") and another co-worker named Angela, whose last name Plaintiff did not know. (Doc. No. 22 at PageID 1045-47.) As Plaintiff does not cite these individuals as comparators the Court will not address them in any depth. Regardless, Graham would not serve as a comparator as she was Plaintiff's co-worker prior to the complained of actions at AFSAC, which form the basis of this lawsuit. Angela is further an inappropriate comparator as there appears to be no allegation that she refused to follow her supervisor's orders, as Plaintiff is alleged to have done.

the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). However, an exact correlation with the factors discussed in *Mitchell* is not required, and the Court "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998); *see also Jackson v. FedEx Corporate Servs., Inc.*, 518 F.3d 388, 396 (6th Cir. 2008) ("The purpose of Title VII and Section 1981 are not served by an overly narrow application of the similarly situated standard").

In determining whether a plaintiff's conduct is similarly sufficient to a comparator's, courts look to, "whether the comparators' actions 'were of comparable seriousness to the conduct for which [p]laintiff was discharged.'" *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 777 (6th Cir. 2016) (quoting *Mitchell*, 964 F.2d at 583). "A plaintiff, 'is not required to show that his proposed comparator's actions were identical to his own.'" *Jackson*, 814 F.3d at 777 (quoting *Colvin v. Veterans Admin. Med. Ctr.*, 390 F. App'x 454, 459 (6th Cir.2010)). However, "a plaintiff cannot establish a reasonable inference of discriminatory motive based on her 'employer's more severe treatment of more egregious circumstances.'" *Jackson*, 814 F.3d at 777 (quoting *Clayton v. Meijer, Inc.*, 281 F.3d 605, 612 (6th Cir.2002)).

Plaintiff argues that Brown, a Caucasian female, is a sufficient comparator. (Doc. No. 21 at PageID 1040.) In Plaintiff's view, Brown did not perform well and if she had delegated work, as he had, she would not have been disciplined in the way he was. (Doc. No. 16-1 at PageID 424.) Defendant argues that Plaintiff fails to point to any evidence that Norsworthy or Holding treated Brown differently from Plaintiff. (Doc. No. 22 at PageID 1046.) Additionally, Brown was not under Brumfield's supervision, and it was Brumfield, not Norsworthy or Holding, who discipline Plaintiff for delegating work assignments. (Doc. Nos. 18 at PageID 998; 22 at PageID 1046.)

Based on the evidence before the Court, Plaintiff has failed to demonstrate that Brown was a similarly situated employee. As an initial matter, Plaintiff does not explain why Brown did not perform well or give any explanation as to the severity of her underperformance. Moreover, there is no indication that Brown failed to gain the appropriate systems access, which was the basis for Plaintiff's reprimand. Consequently, there is no indication Brown's actions were as serious as Plaintiffs. *See Jackson*, 814 F.3d at 777 (quoting *Mitchell*, 964 F.2d at 583).

In addition, Plaintiff's argument that Brown would have been treated differently if she had delegated work is inapplicable for two reasons. First, the argument is purely hypothetical. There is no evidence Brown delegated work, thus it is not comparable. Second, Plaintiff's punishment for delegating work occurred under Brumfield. Brown was not supervised by Brumfield and, again, cannot serve as a similarly situated employee.

Consequently, Plaintiff has failed to make a *prima facie* case of discrimination under Count I, race discrimination, or Count II, sex discrimination.

**B.  Hostile Work Environment Claim**

To establish a hostile work environment claim based on race, the plaintiff must show:

(1) [He] belongs to a protected class; (2) [he] was subject to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known about the harassment and failed to take action.

*Khalaf v. Ford Motor Co.*, 973 F.3d 469, 482 (6th Cir 2020) (citing *Phillips v. UAW Int'l*, 854 F.3d 323, 327 (6th Cir. 2017)).

Similarly, in establishing a claim of hostile work environment based on sex, the plaintiff must show:

(1) [H]e or she was a member of a protected class; (2) he or she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) the

employer is liable.

*Smith v. Rock-Tenn Serv., Inc.*, 813 F.3d 298, 307 (6th Cir. 2016) (citing *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006)).

> Finally, to prevail on a retaliatory hostile work environment claim, a plaintiff must show:
>
> (1) [H]e engaged in activity protected under Title VII; (2) the defendant was aware that the plaintiff engaged in the protected activity; (3) the plaintiff suffered "severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the… harassment."

*Cleveland v. S. Disposal Waste Connections*, 491 F. App'x 698, 707 (6th Cir. 2012) (quoting *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000)).

In determining whether the harassment is sufficiently severe or pervasive to create a hostile work environment, "the conduct in question must be judged by both an objective and a subjective standard." *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 251 (6th Cir. 1998) (quoting *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997)). When evaluating these claims, courts "look[s] at the totality of the alleged [ ] harassment to determine whether it was 'sufficiently severe or pervasive to alter the conditions of [a plaintiff's] employment and create an abusive working environment.'" *Phillips*, 854 F.3d at 327 (quoting *Williams v. CSX Transp. Co.*, 643 F.3d 502, 512 (6th Cir. 2011) (alteration in original)). The circumstances we consider include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Phillips*, 854 F.3d at 327 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (internal citation omitted)).

The Sixth Circuit has clarified that "[t]he totality of the circumstances, of necessity, includes all incidents of alleged harassment," therefore, "the issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case,

16

but whether—taken together—the reported incidents make out such a case." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999). "[O]ccasional offensive utterances do not rise to the level required to create a hostile work environment because, '[t]o hold otherwise would risk changing Title VII into a code of workplace civility.'" *Phillips*, 854 F.3d at 327 (quoting *Grace v. USCAR*, 521 F.3d 655, 679 (6th Cir. 2008)). For example, in the context of alleged racial discrimination, the Sixth Circuit has determined that "even offensive and bigoted conduct is insufficient to constitute a hostile work environment if it is neither pervasive nor severe enough to satisfy the claim's requirements." *Phillips*, 854 F.3d at 328. Additionally, "mere disrespect or antipathy will not be actionable under the statute unless a plaintiff can prove that such was motivated by discriminatory animus." *Khalaf*, 973 F.3d at 848 (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)).

Plaintiff has utterly failed to establish the type of pervasive intimidation, ridicule, and insult that typifies hostile work environment claims. Instead, Plaintiff relies on his own perceptions of how African-American men are perceived in general and imposes that view on AFSAC without any concrete evidence in support of that perception. (*See* Doc. No. 21 at PageID 1041.) At most Plaintiff alleges that Brumfield was condescending to him or that prior co-workers had shared their negative impressions of him. (*Id.* at PageID 1033, 1041.) As explained above, however, "mere disrespect" is insufficient unless it is motivated by discriminatory animus. *Khalaf*, 973 F.3d at 848 (citing *Oncale*, 523 U.S. at 80). Yet Plaintiff does not point to any comments predicated on his race or sex.

Nor does Plaintiff point the Court to any examples of pervasive conduct that would render the work environment at AFSAC hostile. Similarly, Plaintiff fails to point to any pervasive conduct based on his protected EEO, IG, or congressional complaint. Plaintiff opaquely states

17

that, "white women supervisors and managers failed to adequately investigate allegations," made against him. (Doc. No. 21 at PageID 1041.) There is little evidence to support either this statement or that it is otherwise sufficient to establish a hostile work environment. Namely, Plaintiff fails to point to any evidence that any investigation conducted by AFSAC was tainted by animus based on his race or sex. Therefore, Plaintiff has failed to demonstrate a valid hostile work environment claim under any theory.

### C. Retaliation

The Court finally turns to Plaintiff's retaliation claim. Defendant argues that Plaintiff fails to demonstrate that the actions taken against him, to the extent it can identify which actions were retaliatory, were adverse. (Doc. No. 18 at PageID 1013.)

Title VII prohibits discrimination against a job applicant "because he has opposed any practice made an unlawful employment practice. . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). A plaintiff alleging a claim of retaliation, as with a discrimination claim, may establish such a claim through direct or circumstantial evidence. *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 644 (6th Cir. 2015) (citing *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543 (6th Cir. 2008)).

Where, as here, a plaintiff does not rely on direct evidence, a *prima facie* case of retaliation must be established as part of the burden-shifting framework of *McDonnell Douglas*. *Yazdian*, 793 F.3d at 649. To establish a *prima facie* case of retaliation, a plaintiff must show, "'1) he . . . engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action.'" *Hamilton*

*v. GE*, 556 F.3d 428, 435 (6th Cir. 2009) (quoting *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008)). "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 126 S. Ct. 2405, 165 L.Ed.2d 345 (2006). To establish an adverse employment action plaintiffs, "'must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Taylor*, 703 F.3d at 336 (quoting *Garner v. Cuyahoga Cnty. Juvenile Court*, 554 F.3d 624, 639 (6th Cir. 2009)).

While it is not clear which instances Plaintiff alleges form the basis of his retaliation claim, there appear to be three instances the Court must address.[5]

First, on December 12, 2017, Plaintiff alleges that upon his return from an EEO meeting, Norsworthy, his supervisor at the time, told him that he would be reprimanded. (Doc. No. 16-1 at PageID 245.) He further alleges that Norsworthy refused to explain why he was being reprimanded. (*Id*. at PageID 246.) Two months later, on February 12, 2018, Plaintiff was issued a Notice of Reprimand and a Decision of Reprimand was issued on April 4, 2018. (Doc. No. 16-2 at PageID 509-10, 518.) The reason for the reprimand stemmed from Plaintiff's failure to gain systems access at AFSAC in the months preceding the December 12, 2017, encounter. (*Id*. at PageID 509-10.)

---

[5] Plaintiff makes little effort in his response to clarify which actions were retaliatory. In his response, Plaintiff cites to the incident, discussed on pg. 2, where Walker refused to allow Landy's version of the incident with Graham to be heard as retaliatory. (Doc. No. 21 at PageID 1030.) Similarly, Plaintiff states that his reassignment to AFSAC was retaliatory. (*Id*. at PageID 1031.) Yet neither incident is part of the Complaint and, consequently, not before the Court at this late hour. Furthermore, Plaintiff's response states, "soon after Plaintiff filed his newest EEO complaint, he was notified on June 13, 2018 that he was being charged with AWOL because he was late arriving to work due to a large traffic build up at the entrance gate." (*Id*. at PageID 1034.) Plaintiff fails to identify when the referenced EEO complaint was filed, what that nature of the complaint was, or establish a causal connection between the complaint and the AWOL charge. Nor does this incident appear to be part of Plaintiff's Complaint. It is not the responsibility of the Court to do Plaintiff's job and make those connections for him. Plaintiff cannot simply manufacture issues of fact by throwing muddled and unsupported allegations at the wall and expecting the Court to accept them.

The interval between the EEO meeting and the adverse employment action, the Decision of Reprimand, was approximately four months. The Sixth Circuit has held that a four-month interval is insufficient, on its own, to satisfy temporal proximity in order to establish a *prima facie* case. *Cooper v. City of N. Olmstead*, 795 F.2d 1265, 1272 (6th Cir. 1986); *Allen v. Ohio Dep't of Job & Family Servs.*, 697 F. Supp. 2d 854, 897 (S.D. Ohio 2010); *Covert v. Monroe Cnty. Dep't of Job & Family Servs.*, No. 2:08-cv-744, 2010 U.S. Dist. LEXIS 55882, at *36, 2010 WL 2346550, at *9 (S.D. Ohio June 8, 2010). Importantly, the Decision to Reprimand was based on Plaintiff's failure to gain system access over the course of the two months he was at AFSAC. (Doc. No. 16-2 at PageID 509-10.) This included multiple communications prior to December 12 that he needed to gain access. (*Id*.) Moreover, Norsworthy, while aware of the EEO meeting, was not aware of the nature of the meeting. (Doc. No. 16-1 at PageID 247-48.)

Second, Plaintiff alleges that he was threatened with AWOL for arriving late to work on May 14, 2018. (Doc. Nos. 1 at PageID 3; 16-1 at PageID 323.) On that day Plaintiff had an EEO appointment, but had not informed his supervisor, Brumfield, what the meeting was about. (Doc. No. 16-1 at PageID 323-25.) Defendant argues that this incident fails to satisfy the *McDonnell Douglas* test for two reasons. First, Brumfield was not aware of the nature of the EEO meeting. (Doc. No. 18 at PageID 1013-14.) Second, Brumfield's threat to charge Plaintiff with AWOL is not an adverse employment action. (*Id*.) Plaintiff states that he sought a meeting with "Linda Siny in the front office about the AWOL," but was denied a meeting. (Doc. No. 21 at PageID 1034.) This, Plaintiff asserts, is additional evidence that he was being retaliated against. (*Id*.)

The Court agrees that Plaintiff has failed to demonstrate an adverse employment action was taken against him. The threat of being charged with AWOL did not result in an actual charge and there is no indication that Plaintiff suffered any injury or adverse consequences from this

20

incident. Moreover, it is not at all clear who Linda Siny was or why the refusal of a potential superior to meet with Plaintiff was adverse.

Third, Plaintiff appears to allege that the Notice of Proposed Removal was retaliation for filing a congressional complaint. (Doc. No. 21 at PageID 1036.) Plaintiff points to the fact that he was retroactively charged with 376 hours[6] of AWOL after he informed his supervisors that he had filed a congressional complaint. (Doc. No. 16-1 at PageID 355-56.) Indeed, on September 2, 2018, Plaintiff, in a lengthy email with Brumfield copied, informed Jonathan Landon that he was looking into filing a congressional complaint. (Doc. No. 16-2 at PageID 564.) On September 6, 2018, Palmer informed Landon that he had filed a congressional complaint. (*Id*. at PageID 582.)

Prior to September 6, 2018, Plaintiff had been out of the office for one month. (*See* Doc. No. 16-2 at PageID 550-51.) In that time, Plaintiff's supervisors had emailed him on no less than five occasions, informing him that he needed to provide medical documentation in compliance with Air Force policy. (*Id*. at PageID 550, 552, 554, 556, 559.) In four of those emails, Landon or Brumfield directed Plaintiff to the Air Force policy he needed to comply with and—on four occasions—provided specific information on the documentation needed or quoted the relevant policy.[7] (*Id*. at PageID 550, 552, 554, 556, 559.) On August 15, 2018, Brumfield informed Plaintiff that failing to provide the required documentation would result him being charged with AWOL. (*Id*. at PageID 554.)

Even after Plaintiff informed his supervisors that he had filed a congressional complaint, he was given multiple opportunities to provide the appropriate medical documentation. On September 10, 2018, Brumfield again informed Plaintiff that he needed to submit proper medical

---

[6] Plaintiff was charged with 360 hours of AWOL. (Doc. No. 16-2 at PageID 598.)
[7] Plaintiff states, "[d]uring his medical absence, no one told Plaintiff that his doctor notes were not acceptable under Air Force Policy." (Doc. No. 21 at PageID 1036.) Putting aside the multiple emails that were sent to Plaintiff, he fails to cite deposition testimony, declarations, or any evidence whatsoever for this proposition.

documentation and directed him to the relevant Air Force policy. (*Id*. at PageID 565.) Plaintiff was ultimately given until October 2, 2018 to provide medical documentation in compliance with the policy, but failed to do so. (*Id*. at PageID 583.)

As previously noted, Plaintiff fails to cite any caselaw and does not directly address Defendant's retaliation argument beyond stating, "shortly after Defendant was notified that Plaintiff had filed a Congressional inquiry and in retaliation Defendant retroactively charged Plaintiff with 367 hours of AWOL." (Doc. No. 21 at PageID 1036.) However, the Sixth Circuit has repeatedly held that, "temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence." *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000); *see also Krumheuer v. GAB Robins N. Am., Inc.*, 484 F. App'x 1, 5 (6th Cir. 2012); *Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 451 (6th Cir. 2017). Furthermore, "a plaintiff must provide some evidence beyond temporal proximity to demonstrate a retaliatory causal connection, especially where a defendant provides compelling evidence of alternative causation." *Hatchett v. Health Care & Ret. Corp. of Am.*, 186 F. App'x 543, 551 (6th Cir. 2006) (citing *Nguyen*, 229 F.3d at 565-67); *Blume v. Potter*, No. 3:05-cv-266, 2007 WL 9759068, at *5 (W.D. Ky. Aug. 21, 2007) (citing *Steiner v. Henderson*, 121 F. App'x 622, 628 (6th Cir. 2005)).

Plaintiff points to nothing but temporal proximity to establish the retaliatory nexus in this case. However, this nexus is fundamentally undermined by the fact Plaintiff's supervisors repeatedly gave him opportunities to provide the appropriate medical documentation, pointed him to the policy that outlined what was required, and informed him prior to his congressional complaint that he may be charged with AWOL if he failed to provide the appropriate documentation. Indeed, even after Plaintiff filed his congressional inquiry, he was given another

month to file the appropriate documentation. At every turn, Plaintiff failed to provide medical documentation that complied with the Air Force's policy.  In short, Plaintiff has failed to provide any evidence that the decision to charge him with 360 hours of AWOL and the Proposed Notice of Removal were motivated by his congressional complaint.

The Court finds Plaintiff has failed to establish a *prima facie* case of retaliation.

## IV.  <u>CONCLUSION</u>

For the reasons stated above, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. No. 18).

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, July 29, 2024.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE
